UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHEENA JACKSON,                              Case No. 1:13-cv-572
    Plaintiff,                               Barrett, J.
                                             Litkovitz, M.J.

    vs.

COMMISSIONER OF                              **REPORT AND**
SOCIAL SECURITY,                             **RECOMMENDATION**
    Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the

Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 18).

**I.  Procedural Background**

Plaintiff protectively filed applications for DIB and SSI in September 2010, alleging

disability since January 1, 1996,[1] due to a learning disability, bipolar disorder, and suicidal

tendencies. These applications were denied initially and upon reconsideration. Plaintiff,

through counsel, requested and was granted a *de novo* hearing before administrative law judge

(ALJ) Peter J. Boylan. Plaintiff, plaintiff's sister, and a vocational expert (VE) appeared and

testified at the ALJ hearing. On April 2, 2012, the ALJ issued a decision denying plaintiff's DIB

and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making

the decision of the ALJ the final administrative decision of the Commissioner.

---

[1]Plaintiff amended her alleged disability onset date to November 29, 2010, at the ALJ hearing. (Tr. 34-35).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.    42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).    The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.    42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).    The claimant has the burden of proof at the first four steps of the sequential evaluation process.    *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since November 29, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: borderline intellectual functioning, bipolar I disorder, and learning disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine repetitive tasks; no strict productions (sic) quotas; simple work-related decisions; limited to tolerating few changes in a routine work setting; no more than occasional interaction with co-workers, supervisors, and the public and such interaction must be superficial.
>
> 6. The [plaintiff] is capable of performing past relevant work as a [h]ousekeeper. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

3

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 29, 2010, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. 19-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (6th Cir. 2004) (reversal required even though ALJ's

4

decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in finding that plaintiff's impairments did not meet or equal Listing 12.05B or 12.05C; (2) the ALJ erred in weighing the medical opinions of record; and (3) the ALJ improperly discounted plaintiff's credibility. (Doc. 9). Plaintiff's arguments will be addressed in turn.

1. <u>Whether plaintiff meets or medically equals Listing 12.05</u>.

Plaintiff argues the ALJ erred in finding that she did not meet the requirements for intellectual disability under Listing 12.05B or 12.05C.[2]

Listing 12.05 contains an introductory paragraph with the diagnostic description of "intellectual disability" and four sets of criteria set forth in paragraphs (A)-(D). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05 provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

---

[2]"Intellectual disability" has replaced the term "mental retardation" in Listing 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

5

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

   To meet Listing 12.05 for intellectual disability, the impairment must satisfy both the diagnostic description and any one of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)). In satisfying the diagnostic description for intellectual disability, a claimant must demonstrate: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) such deficits in adaptive functioning initially manifested before age 22. *Id*. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). *See also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) ("The American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'") (quoting Diagnostic and Statistical Manual of Mental Disorders, p. 49 (4th ed. 2000)).

   Plaintiff asserts the ALJ erred in failing to find that she meets Listing 12.05B because: (1) she has a valid full scale IQ score of 58 on the Wechsler Adult Intelligence Scale (WAIS) IV, and (2) the evidence of record establishes that she has adaptive functioning deficits which manifested prior to age 22, such as her placement in an individualized education program (IEP) for mentally retarded students and her failure to complete her high school education. Plaintiff contends that the ALJ's lay determination that her IQ score was invalid is not substantially supported by the evidence because there is no congruent medical source opinion in the record.

Plaintiff also argues that the evidence of record establishes that she meets the criteria of Listing 12.05C.   Assuming, *arguendo*, that her IQ score of 58 was a low estimate of her intelligence, plaintiff maintains that this score would satisfy Listing 12.05C even with a 12-point upward variance.   Given the IQ evidence and the ALJ's finding that plaintiff has additional severe mental impairments, plaintiff contends the ALJ should have alternatively found that she met Listing 12.05C.   (Doc. 9 at 9-12).

The Commissioner asserts the ALJ correctly determined that plaintiff did not meet or medically equal the criteria of Listings 12.05B or 12.05C because the medical opinions in the record are in agreement that plaintiff does not have the requisite limitations to meet or equal the listings.   The Commissioner states that the consultative examining and state agency reviewing psychologists found plaintiff had no more than moderate limitations in her mental functional abilities.   Further, the Commissioner contends that plaintiff's own reports of her activities of daily living establish that she does not suffer the required deficits in adaptive functioning to meet or equal the listings.

Plaintiff's school records are sparse.   The record includes plaintiff's high school individualized education plan (IEP) from 2002 to 2004 showing plaintiff was assigned to a special education classroom for the 2002-03 school year and was exempted from statewide standardized testing due to her special education needs.   (Tr. 279-81, 282, 284, 286).   Plaintiff's "disability category" was identified as "mental retardation."   (Tr. 273).   However, the record contains no school progress reports, IQ testing, or other documents reflecting plaintiff's intellectual functioning at that time.

In November 2010, consultative examining psychologist David Chiappone, Ph.D.,

7

evaluated plaintiff for disability purposes. (Tr. 539-44). Plaintiff presented as having a learning disability, depression, and borderline intellectual functioning. (Tr. 539). Dr. Chiappone noted that plaintiff "related in a distant fashion," her "motivation to participate [in the evaluation] was minimal," and her "effort and persistence were limited, especially in testing." (Tr. 540-41). He further noted that plaintiff "did not appear to exaggerate or minimize her complaints" and "[t]he history she provided appeared to be generally accurate, credible, and consistent." (Tr. 541). Plaintiff was alert and oriented and had a slow work pace. (Tr. 542). Dr. Chiappone observed that plaintiff "did not appear to be malingering but she was not invested in the evaluation"; she put forth mediocre effort and persistence; and her concentration, attention, and memory were reduced. (Id). Dr. Chiappone further noted that plaintiff's fund of knowledge was below average and she showed difficulty abstracting verbal similarities and performing calculations beyond simple addition and subtraction. (Id.). Dr. Chiappone also found she had limited insight and judgment. (Id.).

On the WAIS-IV IQ test, plaintiff obtained a verbal comprehension composite score of 61, a perceptual reasoning composite score of 67, and a full scale score of 58. (Tr. 543-44). Dr. Chiappone remarked that plaintiff's "effort and persistence were mediocre at best" and opined that the results were "a low estimate of her ability." (Tr. 543). Dr. Chiappone found that plaintiff's "[a]daptive functioning suggested borderline range of ability." (Id.).

Dr. Chiappone diagnosed a learning disability, major depression, and borderline intellectual functioning. (Tr. 543-44). He assigned a Global Assessment of Functioning (GAF) score of 51, indicating moderate symptoms.[3] (Tr. 543). Dr. Chiappone opined that plaintiff

_____

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.

was mildly impaired in her ability to understand, remember, and follow instructions, and moderately impaired in maintaining attention, concentration, persistence, and pace to perform simple, repetitive tasks. (*Id*.). Dr. Chiappone further found that plaintiff was moderately impaired in her ability to relate to others or withstand work pressures and stress. (*Id*.). Dr. Chiappone concluded that plaintiff "is of borderline intellect and has few internal resources to fall back on." (*Id*.).

State agency reviewing psychologist Douglas Pawlarczyk, Ph.D., reviewed the record in December 2010. (Tr. 73-81). Dr. Pawlarczyk opined that plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration. (Tr. 76). Dr. Pawlarczyk gave Dr. Chiappone's conclusions weight and concluded that plaintiff's history of learning problems were severe but not totally disabling. He concluded that plaintiff would be limited to jobs requiring only minimal contact with the public and which are simple, routine, and do not require strict production demands. (Tr. 81). Dr. Pawlarczyk determined that plaintiff's impairments did not meet or equal the criteria of Listings 12.05B and 12.05C, explaining that even though plaintiff obtained low IQ scores, the consultative examiner diagnosed borderline intellectual functioning given plaintiff's higher adaptive functioning. (Tr. 76, citing Tr. 79).

---

2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. Individuals with scores of 51-60 are classified as having "moderate" symptoms; those with scores of 41-50 are classified as having "serious" symptoms; individuals with scores of 31-40 are classified as having some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood; and individuals with scores of 21-30 are classified as having serious impairment in communication or judgment, including suicidal preoccupation, or an inability to function in almost all areas. *Id*. at 32.

In February 2011, state agency reviewing psychologist Marianne Collins, Ph.D., reviewed the file and similarly found that plaintiff did not have a medically determinable impairment which satisfied the criteria of Listing 12.05B or 12.05C. (Tr. 107). Based on Dr. Chiappone's report and plaintiff's activities of daily living, Dr. Collins opined that plaintiff was not significantly limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, and work in coordination with others. (Tr. 109). Dr. Collins further opined that plaintiff was limited to a static work environment due to her adaptive limitations. (Tr. 110).

The ALJ determined that plaintiff's severe impairments of borderline intellectual functioning and learning disorder did not meet or medically equal the criteria of Listing 12.05B or 12.05C. The ALJ determined that plaintiff's IQ score of 58 obtained on testing was "not a valid representation of her intellectual functioning." (Tr. 21). The ALJ cited to Dr. Chiappone's notations that plaintiff gave mediocre effort on testing. The ALJ also relied on plaintiff's reported activities of daily living, including taking the bus, caring for her children, paying bills, and doing chores, as reflecting a higher level of intellectual functioning. Based on this evidence, the ALJ concluded that plaintiff's IQ score was "not a valid representation of her overall functioning." (Tr. 23).

Plaintiff's first assignment of error should be overruled because the ALJ's finding that plaintiff does not meet or equal Listing 12.05B or 12.05C for lack of a valid IQ score is supported by substantial evidence. "The ALJ may choose to disregard IQ scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation." *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 462 (6th Cir. 2012) (citing

*Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 869, 872 (6th Cir. 2003)). Substantial

evidence supports the ALJ's conclusion that the IQ testing evidence of record is not a valid

representation of plaintiff's overall functioning.

The ALJ reasonably relied on Dr. Chiappone's reports that during testing plaintiff's

"effort and persistence were mediocre at best" and she "was not invested in the evaluation," and

Dr. Chiappone's conclusion that the testing "results are a low estimate of [plaintiff's] ability" in

determining that the IQ scores were invalid. (Tr. 23, citing Tr. 542-43). An ALJ may properly

reject IQ scores where the claimant fails to put forth appropriate effort during IQ testing. *See*

*Shepherd v. Sullivan*, 889 F.2d 1088, 1989 WL 142067 (6th Cir. Nov. 27, 1999) (table). *See*

*also Dragon,* 470 F. App'x at 462. Plaintiff argues that the ALJ erred by relying on her

activities of daily living in discounting the low IQ scores. (Doc. 9 at 10, citing Tr. 23) (the ALJ

noted that despite the low IQ scores, the evidence of record established that plaintiff "engages in

activities that represent at least borderline functioning – taking the bus, caring for her kids,

paying bills, doing house chores."). Plaintiff's argument fails to acknowledge that the ALJ also

relied on Dr. Chiappone's observations of plaintiff's "mediocre at best" effort on testing and his

medical opinion that despite the low scores, plaintiff was properly classified as having borderline

intellectual functioning in determining that she did not meet Listing 12.05. *See* Tr. 21, 23, 543.

The ALJ's conclusion that plaintiff suffers from borderline intellectual functioning and not from

intellectual disability is further supported by the opinions of the state agency reviewing

psychologists (Tr. 76, 79, 107) and treatment notes from plaintiff's mental health provider. *See*

Tr. 581 (on February 7, 2011, Donald C. Chell, PCC-S, a counselor at Centerpoint Health where

plaintiff receives her mental health care, diagnosed plaintiff with borderline intellectual

11

functioning).    In consideration of this evidence and Dr. Chiappone's finding that plaintiff's IQ

scores were not an accurate representation of her functional abilities due to her poor effort on

testing, the ALJ's conclusion that plaintiff does not meet Listing 12.05B or 12.05C for lack of a

qualifying IQ score is supported by substantial evidence.[4]

Accordingly, plaintiff's first assignment of error should be overruled.

2. Whether the ALJ erred in weighing the medical opinion evidence.

For her second assignment of error, plaintiff asserts the ALJ erred in weighing the

medical opinion evidence of record.    Specifically, plaintiff contends that the ALJ violated the

treating physician rule by failing to provide good reasons for rejecting the opinion of her treating

psychiatrist, David V. Berkowitz, M.D.    Plaintiff maintains that Dr. Berkowitz's opinion should

have been given controlling weight as it is well-supported and consistent with other evidence of

record.    Plaintiff further maintains that the ALJ should have given less weight to the opinions of

the non-examining state agency psychologists, Drs. Pawlarczyk and Collins, because their

opinions were based on incomplete reviews of the record evidence.    (Doc. 9 at 12-17).    For the

following reasons, plaintiff's arguments are well-taken.

It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight.    "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once."    *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 530-31 (6th Cir. 1997).    *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

---

[4]To the extent plaintiff argues that she meets the remaining criteria of Listing 12.05C, such as having
deficits in adaptive functioning arising prior to age 22, *see* Doc. 9 at 11, this argument is unavailing.    Assuming,
*arguendo*, that the record establishes that plaintiff meets some of Listing 12.05's criteria, such partial showings are
insufficient.    Plaintiff must put forth evidence that she meets "*all* of the specified medical criteria.    An impairment
that manifests in only some of the criteria, no matter how severely, does not qualify."    *Sullivan v. Zebley*, 493 U.S.
521, 530 (1990).

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference."). "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th

Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]

case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the

ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the

factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what

weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These

factors include the length, nature and extent of the treatment relationship and the frequency of

examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.

In addition, the ALJ must consider the medical specialty of the source, how well-supported by

evidence the opinion is, how consistent the opinion is with the record as a whole, and other

factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6),

416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)(1)).[5]  *See*

*also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the

treating physician opinion).   Those reasons must be "supported by the evidence in the case

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)).   This procedural

requirement "ensures that the ALJ applies the treating physician rule and permits meaningful

review of the ALJ's application of the rule."   *Gayheart*, 710 F.3d at 544 (quoting *Wilson*, 378

F.3d at 544).

Here, the ALJ gave "great weight" to the opinion of the state agency reviewing

psychologist, Dr. Collins, while giving "little weight" to the conclusions of Dr. Berkowitz,

plaintiff's treating psychiatrist at Centerpoint Health (Centerpoint).  *See* Tr. 24-25.  Plaintiff

received mental health treatment at Centerpoint from January 25, 2011, to at least March 2012.

(Tr. 552-83, 765-70, 784-85).   Initially, plaintiff complained of anger problems, depression,

suicidal thoughts, and difficulties in comprehension.   (Tr. 574).   On mental status examination,

the intake social worker, Donald Chell, PCC-S, IMFT, found agitated behavior, poor impulse

control, restless psychomotor activity, sad facial expression, rapid speech, an expansive affect, an

angry/irritable mood, fair recent memory, below average intelligence, and fair judgment.   (Tr.

576).   Plaintiff was diagnosed with bipolar I disorder, most recent episode manic, severe without

---

[5]Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012.   The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

psychotic features, and borderline intellectual functioning. (Tr. 581). She was assessed with a GAF score of 50. *Id.*

Plaintiff received counseling at Centerpoint with Mr. Chell (Tr. 553-54, 562, 565-66, 571-75), and psychiatrists Dr. Berkowitz and Carlos Cheng, M.D., followed her for medication evaluation. *Id.* By June 2011, plaintiff reported that she still had anger problems, but felt more stable when she remembered to take her medications. (Tr. 562). At a July 26, 2011 follow up, Dr. Berkowitz observed that plaintiff was irritated, angry, sullen, and depressed. He discontinued Trazodone and added Ambien to address plaintiff's reports of side effects. (Tr. 560-61). That same day, Mr. Chell noted that plaintiff had difficulty remembering to attend scheduled counseling sessions. (Tr. 559).

On December 8, 2011, Dr. Berkowitz noted that plaintiff appeared very depressed, sullen, and extremely miserable. He noted that plaintiff had been arrested for disorderly conduct after clashing with a police officer. She had not taken her medication in two months. She did not think the Abilify helped her and wanted to try a new medication. Dr. Berkowitz prescribed Risperidone and assessed plaintiff as "unstable." (Tr. 768-69).

On January 5, 2012, plaintiff reported that Risperdal had not helped and she was not sleeping. (Tr. 766). Dr. Berkowitz noted that plaintiff's therapist reported that plaintiff had daily suicidal ideations. (*Id.*). Dr. Berkowitz observed that plaintiff had a "very depressed mood & affect." (*Id.*). She was "desperate, not sleeping [and] wants to be in hospital." (*Id.*). He discontinued her Risperdal, started plaintiff on Seroquel, and assessed she was unstable. (Tr. 767-67).

On January 20, 2012, Dr. Berkowitz completed a Mental Impairment Questionnaire (RFC & Listings). (Tr. 772-77). Dr. Berkowitz diagnosed plaintiff with an unspecified episodic mood disorder and other psychological or physical stress, not elsewhere classified, and assigned plaintiff a GAF score of 50. (Tr. 772). He reported that he provided pharmacological management and individual counseling to plaintiff, and cited to plaintiff's recent depressed mood and affect when asked to explain what clinical findings supported his opinion. (*Id.*). According to Dr. Berkowitz, plaintiff's signs and symptoms included thoughts of suicide; a blunt, flat, or inappropriate affect; feelings of worthlessness; impaired impulse control; difficulties thinking and concentrating; being easily distracted; impaired memory; sleep disturbance; and emotional withdrawal/isolation. (Tr. 773). Dr. Berkowitz opined that plaintiff could not meet competitive standards on a sustained basis in a regular work setting to complete the following: remember work-like procedures; carry out very short and simple instructions; maintain attention for two-hour periods; maintain regular attendance; work in coordination with or proximity to others without being unduly distracted; maintain simple work-related decisions; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without unduly distracting them or exhibit behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; interact appropriately with the general public; and maintain socially appropriate behavior. (Tr. 774-75). Dr. Berkowitz noted that plaintiff had difficulty remembering appointments, difficulty interacting with the public, and continued issues with anger, though she had made some progress. (Tr. 775). He also stated that plaintiff

16

had reduced intellectual functioning. (*Id.*). Dr. Berkowitz opined that plaintiff had marked functional difficulties in maintaining social functioning and concentration, persistence, or pace, and mild limitations in activities of daily living. (*Id.*). He indicated that plaintiff is not a malingerer. (Tr. 776). Dr. Berkowitz concluded that plaintiff would be absent from work more than four days per month due to her impairments and treatment. (*Id.*).

When seen on March 2, 2012, plaintiff "complain[ed] bitterly of Seroquel causing weight gain and dizziness." Dr. Berkowitz noted she appeared mildly depressed and irritable. (Tr. 785). Dr. Berkowitz discontinued Seroquel and prescribed lithium ER. (Tr. 784). Plaintiff was to continue psychotherapy with her therapist. (*Id.*).

Non-examining state agency psychologists Drs. Pawlarczyk and Collins reviewed the record in December 2010 and February 2011, respectively. (Tr. 73-81, 103-12). Their opinions were based on Dr. Chiappone's consultative examination report and plaintiff's subjective statements. Neither doctor reviewed the treatment records from Centerpoint or Dr. Berkowitz's opinion. Both doctors opined that plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration. (Tr. 76, 107).

The ALJ gave "little weight" to Dr. Berkowitz's opinion because: (1) "the form submitted is nothing more than a checklist of symptoms and conclusory statements regarding functioning, [and] not a true residual functional capacity assessment"; (2) it does not mention plaintiff's non-compliance with treatment, such as her missing appointments and not taking medications; (3) the conclusion that plaintiff would frequently miss work is "not genuine" because "if

17

[plaintiff] took her medication and properly (sic) she could function at a higher level" than Dr.

Berkowitz found; and (4) his conclusions are not supported by his treatment of plaintiff and are

based largely on plaintiff's subjective reports.   (Tr. 24).   In contrast, the ALJ gave "great

weight" to Dr. Collins' opinion "as it is consistent with the overall record. . . ." (Tr. 25).   For

the reasons that follow, the ALJ's decision to give "little weight" to Dr. Berkowitz's opinion is

not supported by substantial evidence.

First, the fact that Dr. Berkowitz utilized a standardized form in rendering his opinion is

not a valid basis for discounting it.   While checklist forms are weak evidence where there is no

accompanying explanation for the conclusions contained therein, *see, e.g., Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012), a medical source's opinion is not worthy of less weight on this

basis alone. [6]   The questionnaire endorsed by Dr. Berkowitz, contrary the ALJ's characterization

of it as "nothing more than a checklist of symptoms and conclusory statements" (Tr. 24),

includes detailed information such as the frequency and length of treatment, the type of treatment

rendered, a complete DSM-IV multiaxial evaluation, reports of relevant clinical findings

supporting the opinion, and narrative explanations supporting the conclusions made.   *See* Tr.

772, 775.   The ALJ decision to discount Dr. Berkowitz's opinion on this basis is without

substantial support in the record.

Second, the ALJ discounted the opinion as follows:

[It] makes no mention of [plaintiff's] non-compliance with treatment and the
effect of not taking medication on her symptoms.   Obviously, that plays a role in
her alleged non-stability that he notes in his report.   Moreover, he does not note
that [plaintiff] had success on the medication Abilify; therefore concluding that

_____

[6]Notably, Dr. Collin's opinion, which the ALJ afforded "great weight," was also rendered on a standardized
form and consists largely of conclusory statements with little by way of narrative explanation.   *See* Tr.
107-12.

18

she would be absent four or more times per month is not genuine, when if she took her medication and (sic) properly she could function at a higher level than he notes in his report.

(Tr. 24). At the outset, the Court notes that while Dr. Berkowitz did not specifically mention plaintiff's medication compliance issues when completing the January 20, 2012 Questionnaire, he noted in treatment records from one month prior that plaintiff was "Out of meds x 2 mo. . . . [she] feels abilify no help wants to try something else[.] Never did try the Ambien." (Tr. 768). These notations demonstrate that Dr. Berkowitz was aware of plaintiff's medication compliance issues, but he simply did not share the ALJ's opinion as to plaintiff's success with Abilify.[7]

To the extent the ALJ found that plaintiff's non-compliance "obviously" plays a role in plaintiff's "alleged non-stability" noted by Dr. Berkowitz, this conclusion lacks substantial support in the record. There is no medical opinion relied upon by the ALJ that draws a correlation between plaintiff's compliance with medication and her level of functionality. More importantly, Dr. Berkowitz assessed plaintiff as "unstable" even when she was compliant with her medications. *See* Tr. 766-67. The ALJ's decision to discount Dr. Berkowitz's opinion on this basis is not supported by substantial evidence.[8]

---

[7]The ALJ's conclusory statement that plaintiff had success with Ability is not borne out by the record as a whole. *See* Tr. 553, 560, 768 (plaintiff reported in July and August 2011 that Ability was helping her with anger problems, but she reported being arrested for disorderly conduct in December 2011 and stated that she did not feel Abilify was any help; Dr. Berkowitz discontinued Abilify and his objective observations reflect that plaintiff was depressed and sullen throughout this period despite taking Abilify).

[8]The undersigned acknowledges that, generally, it is proper to base a finding of no disability on a claimant's lack of compliance with treatment. In fact, in order to get benefits, claimants "must follow treatment prescribed by physician[s] if this treatment can restore [their] ability to work." 20 C.F.R. §§ 404.1530(a), 416.930(a). If a claimant does "not follow the prescribed treatment *without a good reason*, [the ALJ] will not find [her] disabled[.]" 20 C.F.R. §§ 404.1530(b), 416.930(b) (emphasis added). Here, however, plaintiff was found to have the severe impairments of bipolar I disorder. (Tr. 19). "For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). "[F]ederal courts have recognized that a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without justifiable excuse." *Pate-Fires*, 564 F.3d at 945 (internal quotations omitted) (and numerous cases cited therein).

19

Third, the fact that Dr. Berkowitz's opinion is based largely on plaintiff's subjective reports is not a good reason for discounting it given the nature of his treating relationship with plaintiff.  Dr. Berkowitz's notes reflect both objective findings on mental status examination and subjective statements by plaintiff that are consistent with his assessment.   In the context of mental health treatment, it is often the case that psychological professionals are required to rely primarily on the statements of patients in forming their diagnoses and opinions; such "talk therapy" is the underpinning of psychiatric treatment and therapists may rely on subjective complaints elicited from patients during clinical interviews in formulating their medical opinions on functional limitations.   *See Warford v. Astrue*, No. 09-52, 2010 WL 3190756, at *6 (E.D. Ky. Aug. 11, 2010) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). Consequently, the fact that Dr. Berkowitz relied in part on plaintiff's self-reports in formulating his opinion is not an adequate basis for the ALJ to reject Dr. Berkowitz's opinion.   Moreover, a review of Dr. Berkowitz's treatment notes does not indicate that this treating psychiatrist believed that plaintiff was untruthful or exaggerated her symptoms.   To the contrary, Dr. Berkowitz indicated on the "Mental Health Questionnaire" that plaintiff was not a malingerer. (Tr. 776).

Lastly, the ALJ's decision does not reflect an analysis of the regulatory factors with respect to the weight accorded to Dr. Berkowitz's opinion.   Dr. Berkowitz is a medical doctor specializing in psychiatry, yet the ALJ did not mention this factor in giving his opinion less weight than that given to the opinions of the non-examining state agency psychologists.   The ALJ was also required to take into account the frequency of plaintiff's treatment with Dr. Berkowitz, but he failed to consider this requisite factor in weighing his medical opinion.   While

the ALJ stated that Dr. Berkowitz's opinion was inconsistent with the treatment records, he failed to cite to any specific examples in support of this conclusion.   By failing to consider the factors listed in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) in determining the weight to give Dr. Berkowitz's opinion, the ALJ's rejection of the treating psychiatrist's assessment of plaintiff's functional capacity is not supported by substantial evidence.   *Cole v. Astrue*, 661 F.3d 931, 939–40 (6th Cir. 2011) ("[T]he ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'") (quoting *Blakley,* 581 F.3d at 407).

The ALJ's failed to give "good reasons" supporting his decision to discount Dr. Berkowitz's opinion or to consider the requisite factors in weighing Dr. Berkowitz's opinion. This constitutes legal error warranting a reversal and remand of this case for a proper analysis of the weight to be given Dr. Berkowitz's opinion consistent with the treating source regulations, 20 C.F.R. §§ 404.1527(c), 416.927(c).   *Wilson,* 378 F.3d at 546.

For these reasons, plaintiff's second assignment of error should be sustained.

3. Whether the ALJ erred in assessing plaintiff's credibility.

Plaintiff also alleges the ALJ erred in assessing her credibility.   As stated above, the undersigned recommends that this matter be remanded because the ALJ failed to provide good reasons for the weight given to the treating psychiatrist's opinion.   As resolution of this issue may impact the remainder of the ALJ's sequential evaluation process, including the assessment of plaintiff's credibility, it is not necessary to address plaintiff's credibility argument.   *See Trent v. Astrue,* No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011).   In any event, even if plaintiff's argument had merit, the outcome would be the same, *i.e.*, a remand for further

proceedings and not an outright reversal for benefits.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings with instructions to the ALJ to re-weigh the opinion evidence from plaintiff's treating psychiatrist in accordance with the treating physician rule; to reconsider plaintiff's credibility and RFC; and for further medical and vocational development as warranted.

<strong>IT IS THEREFORE RECOMMENDED THAT:</strong>

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _10/21/2014_

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHEENA JACKSON,                                  Case No. 1:13-cv-572
     Plaintiff,                                 Barrett, J.
                                                 Litkovitz, M.J.
vs.


COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

23